UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:19cv68-MOC

| | |
|---|---|
| **ERIC JAMES CHRISTENSEN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | ORDER |
| v. ) | |
| ) | |
| **ANDREW SAUL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 12, 13). The matter is ripe for review. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

### FINDINGS AND CONCLUSIONS

**I.  Administrative History**

On July 23, 2015, Plaintiff Eric James Christensen filed applications for a period of disability and disability insurance benefits ("DIB") and for supplemental security income ("SSI"), alleging disability beginning December 21, 2013. (Tr. 48, 189-190, 193-202). His applications were denied initially and upon reconsideration. (Tr. 105-109, 112-116, 117-121). An ALJ held an administrative hearing on November 1, 2017, and Plaintiff attended that hearing with counsel. (Tr. 42-74). On January 26, 2018, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Act. (Tr. 11-20). On December 28, 2018, the Appeals

Council denied Plaintiff's request for review, rendering the ALJ's January 26, 2018, decision the Commissioner's final decision in this case. (Tr. 1-7). Plaintiff then filed this action seeking judicial review of the Commissioner's final decision. Defendant has answered Plaintiff's Complaint, and this case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the Court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record

> should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

### b. Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.[1] The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

    a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

    b. An individual who does not have a "severe impairment" will not be found to be disabled;

    c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

    d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

---

[1] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules were effective as of March 27, 2017. Some of the new rules apply only to applications/claims filed before March 27, 2017, and others apply only to applications/claims filed on or after March 27, 2017. See, e.g., 20 C.F.R. § 404.1527 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. § 404.1520c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); see also Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process). Here, the agency's final decision was issued on January 31, 2018, after the effective date of the final rules, but Plaintiff filed his claim before March 27, 2017. Thus, the 2017 revisions apply to this case, except for those rules that state they apply only to applications/claims filed on or after March 27, 2017.

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. The Administrative Decision

In rendering his decision, the ALJ applied the five-step sequential evaluation process set forth in the regulations for evaluating disability claims. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24 (2003). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date he alleged his disability began, December 21, 2013. (Tr. 13). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, obesity, and depression. (Tr. 13-14). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 14-15.)

Before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity to perform a limited range of sedentary work. (Tr. 15). The ALJ assessed numerous additional limitations, including exertional, postural, and environmental limitations. (Tr. 128). The ALJ also included mental limitations, stating that Plaintiff could "perform simple, routine tasks for two-hour blocks of time with normal rest breaks during an eight-hour workday." (Tr. 15). The ALJ explained the residual functional capacity finding in detail. (Tr. 15-18).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 18). At step five, the ALJ found that, based on Plaintiff's age, education, work experience, and residual functional capacity, as well as testimony from a vocational expert ("VE"), Plaintiff could perform jobs existing in significant numbers in the national economy. (Tr. 19-20). As a result, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. 20).

**V. Discussion**

Plaintiff raises two challenges to the ALJ's decision: (1) Plaintiff argues that the ALJ improperly analyzed the subjective allegations in the record, specifically those regarding pain and (2) Plaintiff argues that the ALJ erred in formulating Plaintiff's residual functional capacity finding. As discussed below, these arguments do not present a basis for remand.

**a. Plaintiff's contention that the ALJ erred in finding that Plaintiff's subjective claims were inconsistent with the other evidence in the record**

Plaintiff first alleges shortcomings in the ALJ's analysis of the subjective statements in the record, including Plaintiff's statements relating to pain. For the following reasons, this contention is without merit.

The Commissioner's regulations outline a two-step process for considering a claimant's statements regarding the limitations caused by her impairments, including limitations resulting from symptoms such as pain. See 20 C.F.R. §§ 404.1529, 416.929; Craig v. Chater, 76 F.3d 585, 593-96 (4th Cir. 1996). First, the ALJ must determine whether objective medical evidence shows the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Craig, 76 F.3d at 594. If so, the ALJ proceeds to the second step and evaluates the intensity and persistence of the symptoms to determine whether they limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c),

-6-

416.929(c); Craig, 76 F.3d at 595.

At this second step, the ALJ must consider all of the evidence in the record, such as medical signs, laboratory findings, medical opinions, and factors listed in the regulations that relate to the reliability of a claimant's statements, such as the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of medication; treatment of symptoms other than with medication; any measures used to relieve the symptoms; and any other relevant factors. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p, 2017 WL 5180304, at **7-8. The ALJ must consider whether there are inconsistencies or conflicts in the evidence, and a claimant's symptoms will be determined to diminish his or her capacity for basic work activities to the extent that the alleged limitations and restrictions due to the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); Craig, 76 F.3d at 595-96. An ALJ's observations concerning questions of credibility are entitled to great weight. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984).

Here, the ALJ acknowledged that Plaintiff's medically determinable impairments could reasonably be expected to give rise to the symptoms Plaintiff claimed. (Tr. 16). But, having reviewed all of the evidence in the record, the ALJ further concluded that Plaintiff's symptoms were "not entirely consistent with the medical evidence in the record . . . ." (Tr. 16). As the ALJ explained in his decision, substantial evidence supports this finding.

The ALJ began by pointing out that the medical evidence in the record did not support the extreme limitations Plaintiff alleged. (Tr. 16). In support of that conclusion, the ALJ acknowledged Plaintiff's history of back pain and stated that the evidence in the record made it

"unrealistic" for Plaintiff to perform work at the medium exertional level or be "on his feet for most of an eight-hour workday." (Tr. 17). The ALJ then went on to discuss evidence from an August 2015 consultative examination report by Dr. Stephen Burgess that Plaintiff had some difficulty with walking, sitting, standing, and postural maneuvers because of back pain. (Tr. 16 (citing Tr. 405 (noting a stiff gait, muscle spasm, reduced range of motion, and a positive straight leg raise test)). However, the ALJ then observed that, in a spinal x-ray taken that same day, after Dr. Burgess conducted his examination, there were no abnormal findings. (Tr. 16-17 (citing Tr. 409)). The ALJ cited similar findings from a March 2016 x-ray as well as a March 2016 MRI scan, which showed only a minor degenerative disc bulge with no significant bulge or stenosis. (Tr. 16-17 (citing Tr. 411, 413)). Having discussed that evidence, the ALJ observed both that the objective scans contradicted the statement in Dr. Burgess's report regarding "multiple herniated discs" and that that statement appeared to be based on a claim Plaintiff stated during the examination. (Tr. 17).

The ALJ then cited other treatment notes in the record, which consistently showed normal findings or only minimally abnormal findings. (Tr. 17). The record supports this statement as well, as most of the treatment records contain the same two findings: that Plaintiff consistently had a "normal neurological exam" and that abnormal findings in the lumbar spine, to the extent they existed at all, were limited to "tenderness." (See, e.g., Tr. 417, 419, 425, 429, 501, 506, 509).

The ALJ did not limit his discussion to the objective medical findings. He also cited Plaintiff's conservative course of treatment in support of his conclusion that the evidence did not support Plaintiff's allegations of extreme or disabling limitations. (Tr. 17). The record supports this conclusion as well. Not only do the treatment notes reflect that Plaintiff only received

treatment in the form of medication and injection therapy, Dr. Burgess and Dr. Trent Glenn specifically noted Plaintiff's conservative treatment, with both sources stating that Plaintiff did not require more invasive measures, specifically surgery. (Tr. 407, 425-426). Both recommended that Plaintiff seek pain management treatment. (Tr. 407, 425).

In response to the ALJ's conclusion on this issue, Plaintiff first argues that the ALJ should not have cited, in support of his conclusion regarding Plaintiff's subjective allegations, the fact that medical sources in the record only recommended conservative treatment for Plaintiff's back impairment. (Pl. Br. 4-6). Plaintiff suggests that this finding by the ALJ was flawed because Plaintiff could not afford additional treatment. (Pl. Br. 6). That fact is not relevant to this aspect of the ALJ's decision. For example, the ALJ did not state that Plaintiff needed surgery but refused it because it was too expensive. Nor did he state that Plaintiff's subjective claims were unsupported because Plaintiff's doctors recommended a course of treatment that Plaintiff could not afford. Instead, the ALJ simply observed that Plaintiff's doctors treated him with conservative measures and rejected more invasive treatment with surgery. (Tr. 17). The ALJ, therefore, properly found that the conservative treatment recommended for Plaintiff was probative of Plaintiff's subjective claims. See 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v); Dunn v. Colvin, 607 F. App'x 264, 273-74 (4th Cir. 2015) (holding that the "conservative nature of Appellant's treatment is an adequate basis to support the ALJ's conclusion that Appellant's testimony of her disabling condition was incredible"). Again, the ALJ acknowledged that Plaintiff's impairments were severe enough to preclude work at the medium exertional level (and presumably the light level as well, though the decision does not specifically state as much), but ultimately concluded that those limitations did not preclude sedentary work. (Tr. 17). The record supports the ALJ's findings.

Plaintiff's claims could arguably be read to state that the ALJ also should not have relied on conservative treatment because that treatment was not successful. (Pl. Br. 5-6). To the extent Plaintiff's motion could be read as such, it is rejected. While the efficacy of treatment is among the regulatory factors that should be considered, whether conservative treatment did or did not work changes nothing about the statements by two doctors that Plaintiff was not a candidate for surgery. Because no medical source recommended treatment beyond medication or pain management—such as surgery—the ALJ did not err in citing conservative treatment among the reasons supporting his decision.

Next, Plaintiff cites his own hearing testimony as proof that he could not "perform work activities for a full day at the sedentary level." (Tr. 6-7). This argument ignores the ALJ's discussion of the reasons why Plaintiff's subjective claims were given only limited weight. As discussed above, the ALJ found that the other evidence in the record did not support the extreme limitations Plaintiff's claimed, including those he discussed in his hearing testimony. Because the ALJ explained that aspect of his decision and cited substantial evidence in support of it, Plaintiff's claims are rejected.

Next, Plaintiff asserts that the ALJ did not discuss the regulatory factors for analyzing subjective claims. (Pl. Br. 9). This argument fails. As discussed above, when an ALJ analyzes an individual's subjective statements, he does so in the context of several regulatory factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of medication; treatment of symptoms other than with medication; any measures used to relieve the symptoms; and any other relevant factors. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p, 2017 WL 5180304, at **7-8.

The decision at issue here makes clear that the ALJ discussed the relevant factors. He acknowledged Plaintiff's statements about his daily activities. (See, e.g., Tr. 16 (discussing Plaintiff's ability to "stand 45 minutes and only 30 minutes in one position; if he is standing or cooking, he can only do this for 30-45; he can only walk no more than 200 yards; lifting and holding is a problem; he testified that he has no strength in his back and can only push or pull 10 pounds.")). He discussed Plaintiff's statements regarding the location, duration, frequency, and intensity of pain. (See, e.g., Tr. 16 (discussing "pain, tingling, and numbness radiating to his feet" and "chronic" nature of pain), Tr. 17 (acknowledging statements regarding limitations in Plaintiff's "ability to walk, stand, bend and sit for extended periods")). He also discussed the treatment Plaintiff received. (Tr. 17 (discussing conservative treatment and citing statements ruling out surgery as an option)). Accordingly, there is no merit to Plaintiff's claim that the ALJ did not discuss the relevant factors.

Nor is there any merit to Plaintiff's claim that the ALJ did not discuss or adopt statements from Dr. Trent regarding sedentary work as supportive of Plaintiff's subjective claims. (Pl. Br. 9). Dr. Trent merely stated that Plaintiff could only do "a very sedentary job," without providing more specific information regarding Plaintiff's abilities to perform work-related tasks over the course of an entire workday or work week. (Tr. 425). That statement is entirely consistent with the ALJ's conclusion that Plaintiff could perform sedentary work subject to the numerous specific limitations the ALJ included in his residual functional capacity finding. (Tr. 15). No additional analysis was required.

In sum, the ALJ conducted the appropriate analysis and based his conclusions on substantial evidence in the record. Thus, this contention by Plaintiff is without merit.

**b. Plaintiff's contention that the ALJ erred in formulating Plaintiff's residual functional capacity finding.**

Plaintiff next argues that the ALJ did not discuss the effects of Plaintiff's pain on his ability to maintain concentration, persistence, and pace over a full workday. For the following reasons, this contention is without merit.

In support of his argument, Plaintiff cites the Fourth Circuit's decision in <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015), where the court found fault with an ALJ decision that found moderate difficulties in concentration, persistence, or pace, but did not include in the residual functional capacity a function-by-function analysis that included a limitation accounting for those difficulties, including the ability to remain on task. <u>Id.</u> at 638. <u>Mascio</u> does not require remand here because the ALJ assessed Plaintiff's residual functional capacity on a function-by-function level, including mental functioning, and considered evidence regarding Plaintiff's ability to maintain concentration, persistence, or pace.

Specifically, when he analyzed Plaintiff's mental impairment under the Listings, the ALJ cited Plaintiff's subjective claims and mental status reports showing "some difficulty with concentration." (Tr. 15). The record supports the ALJ's statement regarding mental status reports: examination findings were consistently, though not uniformly, normal. (<u>See, e.g.</u>, Tr. 407 (no reference to concentration problems in mental status examination), 564 (attention and concentration were "focused"), 568 (concentration "within normal limits"), 571 (same), 574 (concentration "Inattention/Distractibility"), 577 (same), 580 ("within normal limits"), 583 (same), 586 (same)). As a result, the ALJ found that Plaintiff had moderate limitations in this area. (Tr. 15).

Then, in analyzing Plaintiff's residual functional capacity, the ALJ again cited Plaintiff's subjective statements regarding "loss of concentration." (Tr. 16). The ALJ did not simply state that Plaintiff could perform unskilled work or simple tasks. Instead, he specifically considered Plaintiff's mental limitations, deciding that, despite those limitations, Plaintiff retained the ability to perform "simple, routine tasks for two-hour blocks of time with normal rest breaks during an eight-hour workday." (Tr. 15, 18).

By examining this specific area of functioning, the ALJ provided the necessary function-by-function analysis. This Court has repeatedly and consistently stated that reference to the ability to remain on task for two hours at a time satisfies the Mascio requirement that an ALJ address the ability to remain on task when the ALJ finds, in analyzing the Listings, that an individual has moderate limitations in concentration, persistence, or pace. See, e.g., Dalton v. Berryhill, No. 1:17-CV-20, 2017 WL 4819280, at *4 (W.D.N.C. Oct. 25, 2017) (affirming ALJ decision that stated the claimant could not stay on task for work segments lasting more than two hours); Burns v. Colvin, No. 3-14-CV-270, 2016 WL 270311, at *2 (W.D.N.C. Jan. 20, 2016) (finding that an ALJ decision satisfied Mascio by stating the claimant was "unable to work a job that requires her to maintain attention and concentration for a continuous period greater than two hours at a time over the course of an eight-hour workday"); Hicklin-Jones v. Colvin, No. 3:14-CV-584, 2015 WL 8958542 (W.D.N.C. Dec. 15, 2015) (affirming where ALJ included a limitation two-hour work segments with customary breaks).

Similarly, there is no merit to Plaintiff's claim that the ALJ did not explain the extent to which Plaintiff's mental limitations would restrict his ability to perform work-related tasks over the course of an entire workday. (Pl. Br. 13-14). As the residual functional capacity finding makes clear, the ALJ concluded that Plaintiff could work "for two-hour blocks of time with

normal rest breaks during an eight-hour workday." (Tr. 15, 18). Thus, the ALJ provided the "logical bridge" that explains the reasoning behind his conclusions, facilitating this Court's review in accordance with the applicable caselaw. That caselaw requires ALJs to make clear connections between the evidence in the record and the conclusions regarding that evidence, which is what the ALJ here has done. See, e.g., Ladda v. Berryhill, 749 F. App'x 166, 172 (4th Cir. Oct. 18, 2018) (affirming ALJ decision because the ALJ provided the appropriate "logical bridge" between the record and the ALJ's conclusions) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)). Because the ALJ included the appropriate limitations in both the residual functional capacity and in the question to the VE and built a logical bridge between the evidence and the limitations incorporated into the residual functional capacity, the ALJ's decision will be affirmed.

## VI. Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 12) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 13) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: November 26, 2019

Max O. Cogburn Jr.
United States District Judge